

FILED by _KeS_ D.C.

SEP 2 5 2009

STEVEN M. LARIMORE
CLERK U S DIST CT
S D OF FLA – MIAMI

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION**

**FORTUNE BEACH, LLC.,**

        **PLAINTIFFS,**

**VS.**

    **CASE NO.:**

**ALLIANZ GLOBAL RISK
US INSURANCE COMPANY,**

        **DEFENDANT.**

_____/

**09-22875**

MAGISTRATE JUDGE
O'SULLIVAN

**CIV - HUCK**

## COMPLAINT

Plaintiff, FORTUNE BEACH, LLC., ("FORTUNE"), by and through its undersigned attorneys, hereby files its Complaint against Defendant, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, ("ALLIANZ"), and state as follows:

### GENERAL ALLEGATIONS

1.    FORTUNE is a corporation incorporated in the State of Florida, with its principal place of business at 1300 Brickell Ave., Miami, Florida, 33131.

2.    FORTUNE was the owner/developer of a 52-story ocean front condominium project located at 17001 Collins Avenue, Sunny Isles Beach, Florida known as "Jade Beach" ("The Insured Property").

3.    ALLIANZ is a California corporation with its principal place of business in California and is licensed to sell insurance in the State of Florida, engaged at all time pertinent, in the business of insuring real, personal and intangible property against all risk of loss and damages including the peril of fire.

4.    This Court has jurisdiction over the subject matter of this claim pursuant to 28 U.S.C § 1332(a)(1), because the amount in controversy exceeds $75,000.00,

exclusive of damages in excess of $75,000.00, exclusive of attorney's fees, costs and interest, and the dispute is between citizens of different states.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because the dispute involves the interpretation of a contract to insure real property located in this district.

6.     FORTUNE and ALLIANZ entered into an insurance contract, known as a "builder's risk" policy (the "Policy") to indemnify FORTUNE against losses arising during the construction of the condominium building and improvements at the "The Insured Property" (see attached Exhibit "A").

7.     The Initial term of the Policy ran until June 1, 2007.

8.     By subsequent endorsement, the term of the Policy was extended to May 31, 2008.  (See attached Exhibit "B").

9.     Among the possible losses covered by the Policy were delays in the completion of The Insured Property's construction if construction delays were caused by fire damage.

10.     As part of the "builder's risk" policy FORTUNE purchased from ALLIANZ, FORTUNE purchased a policy extension entitled, "Delayed Opening Coverage Form, Delayed Start-Up Expenses Insurance Extension".  (See attached Exhibit "C").

11.     On or about February 20, 2008, while the Policy was in full force and effect, FORTUNE sustained a covered loss when a fire occurred on the 39th floor of The Insured Property, causing severe damages.

12.     As a result of the fire, which FORTUNE incurred damages, including repair costs, delays occurred in the completion of construction of the Insured Property.

13.    After The Insured Property was damaged by the fire, FORTUNE properly and timely notified ALLIANZ of the loss and damage.

14.    Due to the fire damage and the ensuing restoration of the damages to The Insured Property, delays were caused, delaying the completion of construction of The Insured Property.

15.    Rather than being able to proceed forward with the tradition construction of the Insured Property, FORTUNE was forced to reassign personnel/workers to mitigate and remediate damages caused to the Insured Property as a result of the fire.

16.    The Policy's conditions state as follows:

**9.    INSURING AGREEMENT:**

In consideration of the additional premium charged, and subject to the terms, conditions, and limitations of the Policy to which this extension is attached and to the Limit of Liability, terms, conditions, and limitations of this extension, this Policy is extended to indemnify the Insured, specified in the Delayed Start-Up Insurance Extension Schedule, for Delayed Start-Up Expenses, as defined in this extension, incurred during the Period of Delay, when such delay is caused by direct physical loss or direct physical damage to Insured Property during the Period of Insurance, provided such loss or damage is indemnifiable under the Policy to which this extension is attached or would have been indemnifiable except for the application of the Deductible.

**10.    BASIS OF INDEMNITY:**

Subject to the Limit of Liability specified in the Schedule, the Insured will be indemnified for Delayed Start-Up Expenses to the extent that such expenses are actually and necessarily incurred to enable the Insured to commence commercial operations in the manner originally planned.

The Delayed Start-Up Expenses indemnifiable under this extension shall be reduced by the following:

A.    Any income realized from commercial operations at the Location of the Insured Project during the Period of Delay, or any increase in the Insured's income from any other property due to the delay;

B.    Any amount saved in respect of labor costs, charges and expenses payable out of the anticipated revenue that do not arise or are reduced during the Period of Delay;

C.    Any liquidated damages and/or penalties the Insured is entitled to receive.

3

13. **DEFINITIONS:**

A. "Scheduled Date of Completion"

Scheduled Date of Completion shall mean the later of the following:

(i)    The date stated in the Schedule; or

(ii)    The date on which, but for the insured loss or damage, commercial operations would have commenced.

B. "Period of Delay"

Period of Delay shall mean the period of time between the Scheduled Date of Completion, as stated in the Schedule, and the actual date on which commercial operations commenced or could have commenced; however, not exceeding such delay as would result if the loss or damage were repaired or replaced with the exercise of due diligence and dispatch, but in no event exceeding the Period of Indemnity stated in the Schedule for all Indemnifiable Occurrences combined. The Period of Delay shall not be terminated by the expiration or cancellation of the Policy with respect to indemnity payable hereunder in direct consequence of insured loss or damage occurring prior to such expiration or cancellation.

C. "Delayed Start-Up Expenses"

(i)    "Architectural and Engineering Fees"

Architectural and Engineering Fees shall mean additional architectural and engineering expenses incurred, excluding always any costs for redesign or betterment, incurred during the Period of Delay beyond the Scheduled Date of Completion, for the purpose of expediting the repair of Insured Property in the event of direct physical loss or direct physical damage covered under this Policy.

(ii)    "Legal and Accounting Fees"

Legal and Accounting Fees shall mean the owner's additional legal and accounting expenses, incurred as a result the delay in completion, incurred during the Period of Delay after the Scheduled Date of Completion.

(iii)    "Additional Construction Financing Interest"

Additional Construction Financing Interest shall mean additional interest that may be charged by lenders for the extension or renewal of interim financing necessary for the completion of the Insured Project incurred during the Period of Delay after the Scheduled Date of Completion.

(iv)    "Administrative Overhead"

Administrative Overhead shall meant the owner's additional unallocated administrative overhead expenses incurred as a result the delay in completion, incurred during the Period of Delay after the Scheduled Date of Completion.

(v)    "Real Estate, Property Taxes and Insurance"

Real Estate, Property Taxes and Insurance shall real estate or property taxes and similar
assessments which become due and payable during the Period of Delay after the Scheduled
Date of Completion and the premiums for additional insurance that must be purchased due
to a delay in the project which are incurred during the Period of Delay after the Scheduled
Date of Completion.

(vi)    "Sales and Marketing"

Sales and Marketing shall mean additional sales, marketing, advertising and promotional
costs which are incurred during the Period of Delay after the Scheduled Date of Completion.

(vii)    "Real Estate Commissions"

Real Estate Commissions shall mean the additional commissions payable to leasing or real
estate agents resulting from the remarketing caused by loss of sales or leasing as a result of
the delay in completion.

14.    **DEDUCTIBLE CLAUSE:**

It is agreed that the amount designated in the Schedule as the Deductible is a waiting period.  The number
of days in the waiting period stated in the Schedule shall be deducted from the Period of Delay for each and
every Occurrence giving rise to a claim under this extension.

15.    **EXCLUSIONS:**

Coverage afforded by this extension does not insure Delayed Start-Up Expenses resulting from a delay
beyond the Scheduled Date of Completion of the Insured Project directly or indirectly due to:

A.    Enforcement of any ordinance, law, regulation, or ruling restricting or regulating the construction,
repair, alteration, use, installation, operation, or demolition of buildings, structures, or parts of the
Insured Project;

B.    Strikes, protests, lock-outs, labor disturbances, riots, civil commotions, or the acts of any persons
taking part in any such occurrence or disorder;

C.    Suspension, lapse, or cancellation of a lease, license, contract, or order, or the failure of the
Insured to obtain or extend any permit, lease, license, or other commitments;

D.    Alterations, additions, improvements, rectification of defects or faults, or elimination of any
deficiencies carried out during the repair or replacement of lost or damaged Insured Property;

E.    Non-availability of funds for the repair or replacement of lost or damaged Insured Property.

(See attached Exhibit "C").

17.    During the adjustment of the claim, ALLIANZ via its consultant, Madsen,
Kneppers & Associates, Inc., issued a July 2, 2008 report that indicated that despite the
damages to the Insured Property, and the restoration and repairs that needed to be

5

completed, there would be no delay to obtaining the Final Certificate of Occupancy. (See attached Exhibit "D").

18.    During the adjustment of the claim, ALLIANZ via its consultant, Madsen, Kneppers & Associates, Inc., provided an October 3, 2008 report to the Insured stating that the fire repairs did not cause a delay to obtaining the Final Certificate of Occupancy for the building. (See attached Exhibit "E").

19.    Subsequently, FORTUNE provided to ALLIANZ a copy of a report from John Henderson of Henderson Consulting wherein Mr. Henderson concluded that delays caused by the February 20, 2008 fire loss and the ensuing restoration of the fire damages caused a 96 day delay in the project.

20.    Due to ALLIANZ'S failure to properly adjust and admit coverage for FORTUNE'S delay claim, FORTUNE retained the services of a public insurance adjuster, Frank Fortson, to assist it in adjusting its claim and to compel ALLIANZ to admit coverage and pay FORTUNE'S delay claim in full.

21.    On February 12, 2009, ALLIANZ'S adjuster Bill Cartwright, Terry P Skee and Bill Kreidler of Madsen Kneppers & Associates, John Henderson, Mr. Fortson, and others, attended a meeting in regard to the Insured's delay claim.

22.    During this meeting, Mr. Cartwright advised that ALLIANZ was not in agreement to use Mr. Henderson's report's calculation for the measure of the delay, and proceeded to act in an unprofessional manner, telling Mr. Henderson to "shut up" when he was trying to explain his report. During the meeting, Mr. Henderson stated that the emails and files he reviewed to comprise his report was 10 GIG's, to which Mr. Cartwright responded, "if the insured presented 10 GIG's you would see them in six

6

months."   The meeting continued until Mr. Cartwright continued to yell at Mr. Henderson for speaking his opinions about the claims adjustment process and his calculations, and Mr. Henderson left the meeting.

23.     Based upon Mr. Cartwright's actions and statements during the February 12, 2009 meeting, on March 3, 2009 FORTUNE requested that ALLIANZ assign a new adjuster to FORTUNE'S delay claim.

24.     On March 16, 2009, ALLIANZ'S executive general adjuster Laura Connelly denied FORTUNE'S March 3, 2009 request for a new adjuster.

25.     On May 19, 2009, ALLIANZ'S consultant, Madsen Kneppers & Associates completed a report concluding that total amount of days which delay occurred to the completion of the construction of The Insured Property was a period of one hundred and four (104) days, and that the February 20, 2008 fire was the controlling delay. (See attached Exhibit "F").

26.     Within this same report, Madsen Kneppers & Associates alleged that sixty-two (62) days of the period of one hundred and four (104) day were delays that occurred due to factors other than the delays caused by the fire which delayed the completion of construction at The Insured Property.

27.     On July 22, 2009, in a phone conversation between Mr. Fortson and ALLIANZ'S adjuster, the 104 days of delay (as determined by ALLIANZ'S consultant, Madsen, Kneppers & Associates) and the delay rate of loss ($43,513.00) were discussed.   ALLIANZ asked if the Insured would be willing to negotiate on the number of days of loss, to which Mr. Fortson advised that the Insured would not be willing to negotiate as the days of delay (104 days) had been identified by Madsen Kneppers &

Associates as the days of delay to the completion of construction to The Insured Property.

28.     Adopting Madsen Kneppers & Associates May 19, 2009 opinions, on August 6, 2009, ALLIANZ issued a check to FORTUNE in the amount of $522,156.00 for the delay claim.

29.     ALLIANZ arrived at the payment of $522,156.00 by utilizing an average daily loss value of $43,513.00, multiplied by twelve (12) days. ALLIANZ calculated the delay days as follows: 104 days of delay, minus 62 days of concurrent delay which ALLIANZ says was due to non-fire related delays, minus the 30-day waiting period under the Policy, for a total of 12 days payable. The parties have agreed to the use of an average daily value of loss of $43, 513.00.

30.     However, without authority under the Policy, ALLIANZ applied 62 days of "concurrent delay" not provided for under the Policy. Further, it applied the 30-day waiting period prior to applying the alleged "concurrent delay" period.

31.     The Policy does not provide a definition for "schedule" and/or "Commencement of Commercial Operations" regarding the "Scheduled Date of Completion" and/or "Period of Delay", as set forth in the Policy.

32.     Further, the Policy's exclusions do not contain an anti-concurrent cause exclusion which would limit the Insured's claim in the manner claimed by ALLIANZ, nor does the Policy provide an exclusion for other types delays that occur concurrently with fire delays.

33.     ALLIANZ has misconstrued the Policy to provide it a right to assess a deduction of 62 days of concurrent delays associated with the completion of construction of The Insured Property.

34.     FORTUNE has done and performed all those matters and things properly required of it under the insurance Policy, or alternatively, it has been excused from performance of the acts by ALLIANZ by its representations and conduct.

35.     All Florida Statutes are incorporated into and are part of the Policy.

## COUNT I
## DECLARATORY ACTION

36.     FORTUNE re-alleges paragraphs 1 through 35 set forth as if fully restated herein.

37.     This action is filed to determine an actual controversy between the parties, which has left the parties uncertain with respect to their legal rights and legal responsibilities, to wit: whether ALLIANZ is entitled to take a credit of 62 days of delay that ran concurrent with the fire damage delay under the language of the Policy which does not provide an exclusion for concurrent delays.

38.     In particular, ALLIANZ has calculated a total delay of 104 days for the construction of the Insured Property after the February 20, 2008 fire.

39.     However, after deduction for the policy's 30 day waiting period, ALLIANZ has deducted an additional 62 days from the 104 day delay loss.

40.     There exists a bona fide, actual, present and practicable need for a declaration of coverage and a determination on whether ALLIANZ is entitled to apply a 62 day concurrent delay "credit" without authority under the Policy.

41.    The rights of both ALLIANZ and FORTUNE are dependent upon the facts and the law applicable to the facts concerning coverage and payment for its damages under the Policy.

42.    WHEREFORE, FORTUNE seeks a declaration that:

a. ALLIANZ was not entitled to apply a 62 day credit for concurrent delays that occurred with the construction delays as a result of the fire damage claim.

b. That, in the alternative, the Policy is ambiguous because it does not address anti-concurrent delays and/or concurrent delays, nor does it provide for a credit for concurrent delays.

c. Such further declaration by this Court as is supported by the law and the facts.

WHEREFORE, FORTUNE seeks a declaration of the party's rights and duties under the Policy and, to the extent this impacts on its recovery under the insurance contract with ALLIANZ, a recovery of their taxable costs and reasonable attorney's fees under Florida Statutes §627.428.

**COUNT II
DECLARATORY ACTION**

43.    FORTUNE re-alleges paragraphs 1 through 35 set forth as if fully restated herein.

44.    This action is filed to determine an actual controversy between the parties, which has left the parties uncertain with respect to their legal rights and legal responsibilities, to wit: whether ALLIANZ is entitled to first take a credit for the 30 day

waiting period under the Policy and then to take a 62 day credit to follow, as it contends.

45.    In particular, ALLIANZ has calculated a total delay of 104 days for the construction of The Insured Property after the February 20, 2008 fire.

46.    In its calculations, ALLIANZ has applied the Policy's 30 day waiting period, and then an additional 62 days from the 104 day total delay loss under the Policy of insurance.

47.    There exists a bona fide, actual, present and practicable need for a declaration of coverage and a determination on whether ALLIANZ is entitled to apply the deductible of a 62 day concurrent delay period after the 30 day waiting period without authority under the Policy or whether the 30 day waiting period should run at the same time as any concurrent delay period.

48.    The rights of both ALLIANZ and FORTUNE are dependent upon the facts and the law applicable to the facts concerning coverage and payment for its damages under the Policy.

49.    WHEREFORE, FORTUNE seeks a declaration that

     a. ALLIANZ was not entitled to apply a 62 day delay loss credit under the Policy to be applied after the 30 day waiting period in the Policy has concluded.

     b. That the concurrent 62 day delay should run and be calculated simultaneously with the 30 day waiting period.

c. That, in the alternative, the Policy is ambiguous because it does not address and/or provide for the application of running a concurrent delay and the 30 day waiting period simultaneously.

d. Such further declaration by this Court as is supported by the law and the facts.

WHEREFORE, FORTUNE seeks a declaration of the party's rights and duties under the Policy and, to the extent this impacts on its recovery under the insurance contract with ALLIANZ, a recovery of their taxable costs and reasonable attorney's fees under Florida Statutes §627.428.

<u>COUNT III</u>
<u>DECLARATORY ACTION</u>

50.    FORTUNE re-alleges paragraphs 1 through 35 set forth as if fully restated herein.

51.    This action is filed to determine an actual controversy between the parties, which has left the parties uncertain with respect to their legal rights and legal responsibilities, to wit: whether ALLIANZ is entitled to have a coverage issue resolved through the contractual appraisal process.

52.    In particular, ALLIANZ has calculated a total delay of 104 days for the construction of The Insured Property after the February 20, 2008 fire.

53.    FORTUNE has accepted ALLIANZ'S calculation of a total delay of 104 days.

54.    ALLIANZ and FORTUNE have agreed on a daily loss rate of $43,513.00

55.     As a result, there is no dispute as to the total amount of delay days and/or the daily loss rate in calculating the disputed loss.

56.    The only dispute between the parties is whether a delay of 62 days that occurred concurrent with the delay as a result of the fire damages which would limit damages to the Insured.  This is a coverage issue.

57.    The Policy of insurance states as follows:

**30.    APPRAISAL:**

In the event the Insured and the Company are unable to agree as to the amount of the loss or damage to the Insured Property, each shall, on the written demand of the other, select a competent and disinterested appraiser.  The appraisers shall select a competent and disinterested umpire.  If failing for fifteen (15) days to agree upon such umpire, then upon request of the Insured or the Company, such umpire shall be selected by a judge or a court of record in the state in which the Insured Property is located.  Each appraiser shall then appraise the loss and damage stating separately the amount of loss.  If failing to agree the appraisers shall submit their differences to the umpire.  An agreement of the amount of loss in writing of any two shall determine the amount of loss.  Each appraiser shall be paid by the parties selecting him and the expense of appraisal and the umpire shall be paid by the parties equally.  The Company shall not be held to have waived any of its rights by any act relating to appraisal.

58.    The appraisal process is only to determine amount of loss issues, not coverage issues.

59.    On or about July 30, 2009, ALLIANZ demanded that FORTUNE participate in the appraisal process under the Policy to determine the application of a coverage issue, i.e., whether concurrent delay should be applied to the loss under the Policy and, if so, how such a concurrent delay should be applied.

60.    The appraisal process is not appropriate to resolve the parties' dispute as to the application of any concurrent loss delay and the interpretation of the Policy language.

61.    There exists a bona fide, actual, present and practicable need for a declaration of coverage and a determination of whether FORTUNE must participate in the appraisal process as demanded by ALLIANZ based upon the fact that the only dispute between the parties is a coverage dispute regarding the interpretation and application of the Policy language regarding concurrent delays.

13

62.    The rights of both ALLIANZ and FORTUNE are dependent upon the facts and the law applicable to the facts concerning coverage disputes and the application of the appraisal process under the Policy.

63.    WHEREFORE, FORTUNE seeks a declaration that

a.    The dispute between the parties is a coverage dispute that involves the application of the Policy language.

b.    Appraisal is not appropriate to resolve the coverage dispute between the parties in the current claim.

c.    That, in the alternative, the Policy's language is ambiguous as to the application of the appraisal process regarding concurrent delays.

d.    Such further declaration by this Court as is supported by the law and the facts.

WHEREFORE, FORTUNE seeks a declaration of the party's rights and duties under the policy and, to the extent this impacts on its recovery under the insurance contract with ALLIANZ, a recovery of their taxable costs and reasonable attorney's fees under Florida Statutes §627.428.

## COUNT IV
## BREACH OF CONTRACT

64.    FORTUNE re-alleges paragraphs 1 through 35 set forth as if fully restated herein.

65.    During the Policy period, FORTUNE suffered a delay in the construction of The Insured Property as a result of a fire.

66.    The delay suffered in the construction of The Insured Property is a covered peril under the Policy.

67.    FORTUNE has made application for insurance benefits under the Policy, but ALLIANZ has failed and refused to pay the full amount of benefits FORTUNE is entitled to for the loss.

68.    FORTUNE has requested payment in full for the full amount of its damages.

69.    ALLIANZ has breached the Policy of insurance by failing to pay the full amount of benefits under the Policy and by misinterpreting and misapplying its Policy language.

70.    As a direct result of ALLIANZ'S breach of its insurance contract, by underpaying FORTUNE'S claim and making incorrect coverage decisions, FORTUNE has lost the full value, use and benefit of the insurance proceeds are due and owing them.

71.    As a direct result of ALLIANZ'S breach of its insurance contract, FORTUNE was required to become obligated for attorney's fees and costs in connection with the prosecution of this action. Florida Statute §627.428 provides for the payment of attorney's fees in the event of such need.

WHEREFORE, the Plaintiff prays this Honorable Court to enter an award of compensatory and contractual damages, pre-judgment interest, costs of this action, attorney's fees and such other and further relief as this Court may deem appropriate.

Further, the Plaintiff requested a trial by jury on all issues so triable.

## COUNT- V
## BREACH OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

72.    FORTUNE re-alleges paragraphs 1 through 35 set forth as if fully restated herein.

73.    This is an action for damages for breach of the implied covenant of good faith and fair dealing regarding an insurance contract that was in effect at the time of the loss against ALLIANZ for a covered delay claims caused by a fire loss at The Insured Property.

74.    A party's good faith cooperation is an implied condition precedent to performance of a contract.

75.    Where that cooperation is unreasonably withheld, the recalcitrant party is estopped from availing itself of its own wrongdoing.

76.    A contract includes not only the terms and the conditions written, but also terms and matters which, though not actually expressed, are implied by law, and these are binding as the terms which are actually written or spoken.

77.    These implied terms include, among others, the promise to do nothing that would prevent the other party from creating or obtaining any benefit which could arise under the contract.

78.    There is a breach of an implied covenant of good faith and fair dealing where the mutually anticipated result, whether express or implied, is intentionally frustrated by the performance or lack thereof, of the other party.

79.    A party (here ALLIANZ) who unjustly prevents the performance or the happening of a condition of promissory duty thereby eliminates it as a condition.

Accordingly, ALLIANZ cannot escape liability by preventing the happening of the condition on which it was promised.

80.    ALLIANZ has acknowledged its obligation and duty of an implied covenant of good faith and fair dealing in the handling of an insured's insurance claim.

81.    ALLIANZ has acknowledged its liability for its and/or its representative's breach of the implied covenant of good faith and fair dealing with regards to its contracts for insurance it has issued to policyholders.

82.    ALLIANZ and/or its representatives (including its adjusters, while acting for ALLIANZ) have breached the implied covenant of good faith and fair dealing in the handling of FORTUNE'S insurance claim.

83.    The Policy states:

> IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

(See attached Exhibit "A").

84.    FORTUNE has paid ALLIANZ a premium for the coverages listed in the Policy, and has complied with all provisions contained in the Policy. However, ALLIANZ has failed to provide the insurance as described in the "Agreement" for FORTUNE'S loss. ALLIANZ has breached this provision of the Policy.

85.    Under the Policy, FORTUNE'S damage delay claim is a covered peril.

86.    Although FORTUNE'S loss is a covered peril under the Policy, ALLIANZ has failed/refused to provide full coverage and tender the full amount of monies due and owing FORTUNE for their loss in a timely manner.

87.    ALLIANZ has knowledge that the damages suffered by FORTUNE exceed the amounts provided, yet ALLIANZ refuses to acknowledge or tender any amounts to FORTUNE.

88.    As a direct result of ALLIANZ'S breach of an implied covenant of good faith and fair dealing, FORTUNE was required to become obligated for attorney's fees and costs in connection with the prosecution of this action, and Florida Statute §627.428 provides for the payment of attorney's fees in the event of such need.

**WHEREFORE**, the Plaintiff, FORTUNE, prays this Court to enter an award of compensatory damages, pre-judgment interest, costs of this action, attorneys fees under Florida Statute §627.428; and such other and further relief as this Court may deem just and proper.

Further, Plaintiff requests a trial by jury on all issues so triable

_9/24/09_
DATE

DAVID C. MURRAY, ESQUIRE
Florida Bar No. 542121
MATHEW R. DANAHY, ESQUIRE
Florida Bar No. 542121
DANAHY & MURRAY, P.A.
901 W. Swann Avenue
Tampa, FL  33606
(813) 258-3600
(813) 258-3321 (fax)
dave@danahyandmurray.com
matt@danahyandmurray.com
Attorneys for Plaintiff

**COMMERCIAL LINES POLICY**
**COMMON POLICY DECLARATIONS**                    **Allianz Global Risks US Insurance Company**

POLICY CHECKED

| PRODUCER NO. | | COMMISSION % | CLAIM REPT FREQ | CUSTOMER NO. | | AUDIT |
|---|---|---|---|---|---|---|
| 0030372 | | | | | | |

| BRANCH | SYMBOL | POLICY | | Renewal of NO. |
|---|---|---|---|---|
| 66 | ATO | NO. 3005784 | | |

**Named Insured and Mailing Address**
Fortune Beach LLC, PAVARINI CONSTRUCTION
DBA JADE BEACH
17001 Collins Avenue    C/O FORTUNE INC
Sunny Isles, FL 33160   3/31/05

**Producer**
Peachtree Special Risk Brokers
250 Corporate Center Court
Stockbridge, GA 30281

Policy Period: From   March 21, 2005   to   June 01, 2007   5/31/07   3/1/08   at 12:01 A. M. Standard Time at your mailing address shown above.
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ |
| Commercial Inland Marine Coverage Part     10,000,000 PRIMARY LAYER | $           665,000.00 |
| Boiler and Machinery Coverage Part | $ |
| Commercial Crime Coverage Part | $ |
| Commercial General Liability Coverage Part | $ |
| | $ |
| Commercial Auto Coverage Part | $ |
| Florida Surcharge | $                  4.00 |
| | $ |
| | $ |
| | $ |
| | TOTAL    $           665,004.00 |

Premium shown is payable: $    665,004.00 at inception; $ _____ 1 st Anniversary; $ _____ 2 nd Anniversary

Form(s) and Endorsement(s) made a part of this policy at time of issue*:
Per Forms and Endorsement List, Form AGR-DS 1002 (11-03).

*Omits applicable Forms and Endorsements if shown in specific Coverage Part / Coverage Form Declarations.

Countersigned:

Date       March 18, 2005       By _____
                                      Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENT, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

AGR-DS 1001 (11/03)       Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1983, 1984.

                                      EXTRA


EXHIBIT
"A"

RCVD JUN 9 '05

**Allianz ⑪**
Global Risks

Named Insured: Fortune Beach LLC/Pavarini Construction and their Sub
Contractors ATIMA /dba: Jade Beach
Policy Number: ATO 3005784
Effective Date: May 31, 2007

Endorsement Number
15

## GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

Contractors Installation/Builders Risk Form

Delayed Opening Coverage Form / Delayed Start-Up Expenses Insurance Extension

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $537,425, IT IS AGREED THAT ITEMS 3B, AND 7 OF THE SCHEDULE OF THE CONTRACTORS INSTALLATION/BUILDERS RISK FORM ARE AMENDED TO READ AS FOLLOWS:

3.    PERIOD OF INSURANCE:

   B.    Expiration Date:                    March 01, 2008

7.    RATE/PREMIUM:

   The deposit premium is $1,031,625 plus $4 Florida Surcharge (Total of $1,031,629).

   The final earned premium shall be computed at a term rate of $0.8874 per $100 of the final Total Project Value, as determined upon completion of the Insured Project, subject to a minimum premium of $1,031,625. There shall not be any return of premium in the event the final Total Project Value falls below the estimated Total Project Value stated in Item 2.C. of the Schedule or if the Insured Project is completed prior to the Expiration Date as stated in Item 3.B. of the Schedule.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $95,723, IT IS AGREED THAT ITEMS 3B, 5, AND 8 OF THE SCHEDULE OF THE DELAYED OPENING COVERAGE FORM / DELAYED START-UP EXPENSES INSURANCE EXTENSION ARE AMENDED TO READ AS FOLLOWS:

3.    PERIOD OF INSURANCE:

   B.    Expiration Date:                    March 01, 2008

5.    SCHEDULED DATE OF COMPLETION:          March 01, 2008

8.    MINIMUM EARNED PREMIUM:                $229,675

RCVD JUN 27 '07

AGR IL M001 (11-03)

**Allianz** (山)
Global Risks

**Named Insured:** Fortune Beach LLC/Pavarini Construction and their Sub
Contractors ATIMA /dba: Jade Beach
**Policy Number:** ATO 3005784
**Effective Date:** January 01, 2006

**Endorsement Number**
**16**

## CONDITIONAL LIMITATION OF COVERAGE FOR TERRORISM
## – SUBLIMIT ON ANNUAL AGGREGATE BASIS ENDORSEMENT
### (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This Endorsement modifies insurance provided under the following:

INLAND MARINE FORM

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium charged, and subject to the terms, exclusions, limits and conditions of the Policy to which this Endorsement is attached and to the provisions contained within this Endorsement, the following changes are made to the Policy:

A. **Applicability of the Provisions of This Endorsement**

1. The provisions of this Endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002 effective November 26, 2002, and extended by the Terrorism Risk Insurance Extension Act of 2005, has terminated with respect to the type of insurance provided under this Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to the Insured and with revisions that:

      i. Increase the Company's statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses the Company must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      ii. Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      iii. Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this Policy.

   The Program is scheduled to terminate at the end of December 31, 2007 unless renewed, extended, or otherwise continued by the federal government.

2. If the provisions of this Endorsement become applicable, such provisions:

   a. Supersede any terrorism Endorsement(s) already included or endorsed to the Policy that addresses a certified act of terrorism and/or a non-certified act of terrorism, but only with respect to loss or damage from an Occurrence of Terrorism as defined in Paragraphs B.1. and B.2. that occurs on or after the date when the provisions of this Endorsement become applicable; and

   b. Remain applicable unless the Company notifies the Insured of changes in these provisions, h response to federal law.

3. If the provisions of this Endorsement do NOT become applicable, any terrorism Endorsement(s) already endorsed to the Policy, that addresses a certified act of terrorism and/or a non-certified act of terrorism, will continue in effect unless the Company notifies the Insured of changes to that Endorsement(s) in response to federal law.

AGRT-CM 5T35 (07-06)

Includes copyrighted material of Insurance Services Office, Inc.
with its permission

Page 1 of 4

Allianz (⏐⏐)
Global Risks

**B. Amendment**

For purposes of this Endorsement only, any definition of terrorism or Occurrence stated in the Policy to which this Endorsement is attached is amended as follows:

1. Terrorism means activities against persons, organizations, or property of any nature:

   a. that involve the following or preparation for the following:

      i. Use or threat of force or violence; or

      ii. Commission or threat of a dangerous act; or

      iii. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      i. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      ii. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. Occurrence as applied to Terrorism means one loss, disaster, or casualty, or series of losses, disasters or casualties attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses will be treated as one Occurrence. It shall be defined as the sum total of all losses arising out of or caused by Terrorism during any period of 72 consecutive hours. When filing proof of loss, the insured shall have the right to elect the moment at which the 72 hour period shall be deemed to have commenced provided always that no elected period of 72 hours shall commence earlier than when the first loss to the Insured Property or interests occurs. However, the Company shall not be liable hereunder for any loss or damage:

   a. Occurring before the Policy becomes effective; or

   b. Arising from an Occurrence which is in progress at the time the Policy becomes effective, even if such loss or damage occurs after the Policy becomes effective; or

   c. Occurring after the Expiration Date of the Policy, except loss or damage arising from an Occurrence in progress at the time the Policy expires.

**C. The following exclusion is added to the Policy:**

EXCLUSION OF TERRORISM INCLUDING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM

The Company will not pay for loss or damage covered by this Policy including its Endorsements caused directly or indirectly by Terrorism, including action in hindering or defending against actual or expected Terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following conditions are attributed to Terrorism:

1. The Terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the Terrorism was to release such material; or

3. The Terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**Allianz ⑪**
Global Risks

4.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the Terrorism was to release such materials; or

5.  The Terrorism occurs outside of the fifty (50) states of the United States of America and the District of Columbia.

D.  Limitation of Amount of Coverage for Terrorism

When Terrorism is not excluded by any of the conditions in Paragraphs C.1 through C.5 above, coverage for Terrorism is subject to the following conditions, limitations, provisions, and exclusions:

1.  This provision is subject to a sublimit shown in Paragraph D.2 below. However, the sublimit in Paragraph D.2 below only applies to covered Terrorism when the total amount of loss exceeds a U.S. $25,000,000 threshold in any one Occurrence;

Coverage under this provision only applies to Insured Property at the location of an Insured Project provided that location is within one of the fifty (50) States of the United States of America or the District of Columbia;

The calculation of the threshold is done by including the total of all Insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada from Terrorism in the same Occurrence. When that calculation results in a total amount greater than $25,000,000, then the sublimit will apply. In making this calculation, the Company will include all insured damage sustained by property of all persons and entities affected by the Terrorism and business interruption losses sustained by owners or occupants of the damaged property in that same Occurrence. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions;

2.  Irrespective of the number of locations involved, the Company shall not be liable under this Endorsement for more than the following sublimit for all loss or damage covered by this Policy caused directly or indirectly by or resulting from Terrorism during any one Occurrence, including any loss or damage covered by this Policy or its Endorsements (by fire or otherwise) which ensues from Terrorism. This limitation applies even if another peril not otherwise excluded contributes concurrently or in any sequence to the loss or damage. Notwithstanding anything to the contrary in the Policy including its Endorsements to which this Endorsement is attached, this sublimit is reflective of the Company's share and may not represent the 100% program sublimit.

Sublimit:

$1,000,000 (being 100%) part of $1,000,000 per Occurrence and in the Annual Aggregate in Excess of Deductibles.

The sublimit is part of and not in addition to the Policy Limit. The sublimit does not increase the Policy Limit or any other sublimit.

The Occurrence sublimit for this Endorsement is subject to an Annual Aggregate; such sublimit shall apply in the aggregate for all losses under this Endorsement occurring during the Policy Period.

**Allianz ⒜**
Global Risks

E. **Application of Other Exclusions**

1. When the EXCLUSION OF TERRORISM INCLUDING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM applies in accordance with the terms of Paragraphs C.1. or C.2., such exclusion applies without regard to any Nuclear Hazard Exclusion or Radioactive Contamination Exclusion in this Policy including its Endorsements.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Policy including its Endorsements, such as losses excluded by any Nuclear Hazard Exclusion or War Exclusion.

Where the terms "Policy" or "Company" in this Endorsement are defined in the Policy to which this Endorsement is attached, those terms herein assume those same definition(s).

**All other terms and conditions remain unchanged.**

Includes copyrighted material of Insurance Services Office, Inc.
with its permission



Peachtree
Special
Risk Brokers, LLC

621 Northwest 53rd Street, Suite 385 Boca Raton, Florida 33487
Tel: 561-981-5802  Fax: 561-994-9413  Web: www.psrllc.com

22-June-2007

Marcel McSweeney
Brown & Brown Insurance-Miami Lakes
Spessard Holland Building
8000 Governors Square Boulevard, Suite 400
Miami Lakes, Florida 33016-1588

Re:    Fortune Beach, LLC.
       Policy #: ATO 3005784
       3/31/05-3/1/08

Dear Marcel,

Attached please find the original & one copy of endorsement #15 extending the policy for the above mentioned insured.

It is your responsibility as a representative of the insured to check the endorsement for accuracy. Coverage may be different than originally requested & any changes will require carrier approval.

Please let me know if you have any questions or if any needed changes should be made & thank you in advance for your continued support.

Best Regards,

Denise Munnilal

**Teresa Crespo**

| | |
|---|---|
| **From:** | Brian Henderson [BHenderson@psrllc.com] |
| **Sent:** | Saturday, June 03, 2006 1:47 PM |
| **To:** | Berry Hayley |
| **Cc:** | Christine Febbraro; Teresa Crespo |
| **Subject:** | Fortune Beach |

Berry,

There is an outstanding request for a priority of payment endorsement to be added to the excess RLI policy on the captioned builder's risk. I am aware that we confirmed that RLI would be OK with the priority of payment endorsement during the course of negotiations. However, the underwriter that agreed to this coverage is no longer with RLI. In fact, RLI has shut-down their construction division as they had a mass exodus of all of their builder's risk underwriters. The agreement that I had with RLI was over the phone and the new service technicians are not endorsing this coverage to the policy. There is nothing more I can do to get this endorsement added to the policy.

As far as the other request's. We have confirmed that Allianz has agreed to remove the cold testing exclusion and have agreed to permission to occupy for 30-days from the TCO being issued. Allianz is not however issuing an endorsement.

I will phone you on Monday to go over these items.

Thanks,

Brian W Henderson
Vice President
Peachtree Special Risk Brokers, LLC
621 NW 53rd Street, Suite 135
Boca Raton, FL 33487
Direct- 561-981-5811
Cell- 404-849-1552
Fax- 561-994-9413

CONFIDENTIALITY NOTICE: The information contained in this communication, including a

6/6/2006

**Allianz** (ⅲ)
Global Risks

Named Insured: **Fortune Beach LLC/Pavarini Construction and their Sub Contractors ATIMA /dba: Jade Beach**
Policy Number: **ATO 3005784**
Effective Date: **February 8, 2006**

Endorsement Number
**11**

## GENERAL CHANGE EDORSEMENT

This endorsement modifies insurance provided under the following:

CONTRACTORS INSTALLATION/BUILDERS RISK FORM

IT IS AGREED THAT MORTGAGEE IS HEREBY ADDED TO THE POLICY AS FOLLOWS:

MORTGAGEE:     HSBC Bank USA NA
                        Its success and/or assigns
                        452 Fifth Avenue 24th Floor
                        New York, NY  10018

**Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, or limitations of the Policy to which this endorsement is attached, other than as above stated.**

AUTHORIZED REPRESENTATIVE

2/10/06-mb

AGR IL M001 (11-03)

Page 1 of 1

**Allianz** ⑪
Global Risks

Named Insured: **Fortune Beach LLC/Pavarini Construction and their Sub Contractors ATIMA/dba: Jade Beach**
Policy Number: **ATO 3005784**
Effective Date: **March 31, 2005**

**Endorsement Number
10**

## GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

CONTRACTORS INSTALLATION/BUILDERS RISK FORM

IT IS AGREED THAT THE NAMED INSURED MAILING ADDRESS IN THE COMMERCIAL LINES POLICY COMMON POLICY DECLARATIONS AND COMMERCIAL INLAND MARINE COVERAGE PART DECLARATIONS IS AMENDED TO READ AS FOLLOWS:

Named
Insured
and Mailing
Address

⌈ Fortune Beach LLC
  Pavarini Construction and their Sub Contractors ATIMA
  dba: Jade Beach
  1300 Brickell Avenue
⌊ Miami, Florida  33131                                                    ⌋

IT IS AGREED THAT ITEM 1A OF THE SCHEDULE OF THE CONTRACTORS INSTALLATION/BUILDERS RISK FORM AND DELAYED OPENING COVERAGE FORM/DELAYED START-UP EXPENSES INSURANCE EXTENSION IS HEREBY AMENDED TO READ AS FOLLOWS:

1A.     NAMED INSURED:          Fortune Beach LLC
                                Pavarini Construction and Sub Contractors ATIMA
                                Dba: Jade Beach

**Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, or limitations of the Policy to which this endorsement is attached, other than as above stated.**

_____
AUTHORIZED REPRESENTATIVE

10/5/05-mb

AGR IL M001 (11-03)                                                              Page 1 of 1

**Allianz** (ill)
Global Risks

Named Insured:   Fortune Beach LLC
Policy Number:   ATO 3005784
Effective Date:   March 31, 2005

Endorsement Number
8

## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

CONTRACTORS INSTALLATION/BUILDERS RISK FORM

IT IS AGREED THAT THE NAMED INSURED MAILING ADDRESS IN THE COMMERCIAL LINES POLICY COMMON POLICY DECLARATIONS AND COMMERCIAL INLAND MARINE COVERAGE PART DECLARATIONS IS AMENDED TO READ AS FOLLOWS:

Named
Insured
and Mailing
Address

⌈ Fortune Beach LLC and Pavarini Construction, Inc. DBA: Jade Beach ⌉
   c/o Fortune International
   1300 Brickell Avenue
   Miami, Florida  33131
⌊                                                              ⌋

IT IS AGREED THAT ITEM 3. OF THE CONTRACTORS INSTALLATION/BUILDERS RISK FORM IS AMENDED TO READ AS FOLLOWS:

3.    **PERIOD OF INSURANCE:**

   A.    Effective Date:          March 31, 2005

   B.    Expiration Date:         May 31, 2007

IT IS AGREED THAT ITEM 3. OF THE DELAYED OPENING COVERAGE FORM/DELAYED START-UP EXPENSES INSURANCE EXTENSION IS AMENDED TO READ AS FOLLOWS:

3.    **PERIOD OF INSURANCE:**

   A.    Effective Date:          March 31, 2005

   B.    Expiration Date:         May 31, 2007

IT IS FURTHER AGREED THAT THE EFFECTIVE DATE OF ENDORSEMENT NUMBERS 1, FUNGI EXCLUSION ENDORSEMENT, ENDORSEMENT NUMBER 2, CERTIFIED ACT OF TERRORISM, ENDORSEMENT NUMBER 3, NON-CERTIFIED ACT OF TERRORISM - SUBLIMIT ENDORSEMENT, ENDORSEMENT NUMBER 4, TRIA GENERAL CHANGE ENDORSEMENT, ENDORSEMENT NUMBER 5, CONDITIONAL LIMITATION OF COVERAGE FOR TERRORISM – SUBLIMIT ON ANNUAL AGGREGATE BASIS ENDORSEMENT, ENDORSEMENT NUMBER 6, COMBINED SINGLE LIMIT ENDORSEMENT, AND ENDORSEMENT NUMBER 7, WATER DAMAGE LIMITATION - INTERIOR OF BUILDING IS AMENDED TO READ MARCH 31, 2005.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, or limitations of the Policy to which this endorsement is attached, other than as above stated.

7/22/05 – mb

_____
AUTHORIZED REPRESENTATIVE

AGR IL M001 (11-03)

Page 1 of 1

RCVD JUL 29 '05

**Allianz (ili)**
Global Risks

Named Insured:   Fortune Beach, LLC
Policy Number:   ATO 3005784
Effective Date:   March 31, 2005

Endorsement Number
9

## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

CONTRACTORS INSTALLATION/BUILDERS RISK FORM SCHEDULE

IT IS AGREED THAT ITEMS 6 AND 8 OF THE CONTRACTORS INSTALLATION/BUILDERS RISK FORM SCHEDULE ARE HEREBY AMENDED TO READ AS FOLLOWS:

6.    DEDUCTIBLES:

Each loss shall be adjusted separately and from the amount of each adjusted loss the amount as stated below shall be deducted:

A.    For Land Movement———————————————— $   100,000    per Occurrence

B.    For Water Damage———————————————— $   250,000    per Occurrence

C.    For Named Storms———————————————— 5% of the Total Project Value at risk at the time of the loss subject to a minimum deductible of $250,000 per Occurrence

It is understood that the Named Storms deductible shall apply to all loss or damage that are Named Storm related, and shall include loss or damage caused by windstorm, hurricane, hail, tornado, Water Damage, wave wash, wind driven rain, sewer backup and mudslide.

D.    For windstorm———————————————— $   100,000    per Occurrence ← *CORRECTION*

C.    For all other perils ———————————————— $   25,000    per Occurrence

In the event that more than one Deductible amount applies per Occurrence, then only the largest applicable Deductible amount shall be applied.

8.    INSURING AGREEMENT:

This Policy, subject to the Limit of Liability and the terms, conditions, and limitations contained herein or endorsed hereon, insures against all risks of direct physical loss of or direct physical damage to Insured Property during the Period of Insurance while such Insured Property is at the construction site, stored off-site, or in the course of transit within the Territorial Limits specified in the Schedule.

Provided always that this insurance shall cease to attach as from 30 consecutive days after the first temporary certificate of occupancy is issued for the Insured Property or the Expiration Date stated in Item 3.B. of the Schedule, whichever is the earlier.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, or limitations of the Policy to which this endorsement is attached, other than as above stated.

7/21/05 – C.R.W.

_____
AUTHORIZED REPRESENTATIVE

AGR IL M001 (11-03)

Page 1 of 1

**NOTEPAD** INSURED'S NAME FORTUNE BEACH LLC    FORTU-3    PAGE 1
OP ID CL    DATE 06/17/05

Applicant/Insured: Fortune Beach LLC and Pavarini Construction Inc.
ALLIANZ INSURANCE- COMPANY LIMITS: $10,000,000 PRIMARY PER OCCURRENCE
AND AGRGREGATE

Total Insured Values - $129,359,000 (Excluding pilings/foundations)
$115,000,000 Hard Cost (Excluding pilings/foundations).

$14,359,000 Soft Cost / Delay in Completion, Additional Expenses

Soft Cost / Delay in Completion, Additional Expense Covered Items (12
Month Period of Indemnity)
Interest Payments $ 6,000,000            — 3,829,500
Real Estate Taxes $ 800,000
Advertising / Promotional / marketing $ 100,000    580,000
Commission Expense $ 650,000
Architect / Engineer / Consulting Fees $ 50,000
Legal & Accounting Fees $ 200,000
Sales center Operating Expense $480,000
Insurance Premiums $ 2,250,000
Contractors General Conditions & Fees $ 3,829,000
Sub-Limits per Occurrence
Debris Removal with a $100,000 sub limit for debris of others
Property In Transit $1,000,000
Offsite Storage $1,000,000
Ordinance or Law $5,000,000
Seepage/Wind Driven Rain/Water damage (to interior of the building not
arising from external cause) $1,000,000
Expediting Expenses(*): $250,000
(*) Not withstanding the $250,000 Expediting Expense limit, underwriters
agree to pay all incurred expenses that actually reduce a covered loss.

Sub Limits Per Occurrence and in the Annual Aggregate
Land Movement $10,000,000
Water Damage/Flood $20,000,000 *

Deductibles per Occurrence
All Perils except below listed Perils - $25,000
Named Storm - 5% of Total Completed Values at the time of loss subject to
$250,000 min. Wind & Water Damage/Flood
All Other Wind - $100,000 *
All Other Water Damage/Flood - $250,000
Land Movement - $100,000
Delay in Completion, Soft Cost/Additional Expenses - 30 Day Waiting Period

Allianz Insurance Company Limits:
$10,000,000 Primary per occurrence and Aggregate as above.

**COMMERCIAL INLAND MARINE COVERAGE PART DECLARATIONS**

## Allianz Global Risks US Insurance Company

(A Stock Company)
2350 Empire Avenue
Burbank, CA 91504-3350

| BRANCH | SYMBOL | POLICY | Renewal of NO. | Control |
|---|---|---|---|---|
| 66 | ATO | NO.  3005784 | | NO. |

**Named Insured and Mailing Address***

Fortune Beach LLC

17001 Collins Avenue

Sunny Isles, FL 33160

**Producer**

Peachtree Special Risk Brokers
250 Corporate Center Court
Stockbridge, GA 30281

Policy Period*: From    March 21, 2005    to    June 01, 2007    at 12:01 A. M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**BUSINESS DESCRIPTION**

Per item no. 2.A.(ii) of the schedule of the Policy form.

**PREMIUM**

Premium for this Coverage Part  $        665,000.00

Premium shown is payable *:  $        665,004.00  at inception;  $            1 st Anniversary;   $            2 nd Anniversary

**FORMS AND ENDORSEMENTS**

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue**:

Per Forms and Endorsement List, Form AGR-DS 1002 (11-03).

Countersigned: *

Date    March 18, 2005    By _____

                                    Authorized Representative

*Entry optional if shown in Common Policy Declarations.

**Forms and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1983, 1984.

**EXTRA**

AGR-CM 1001 (11-03) (Rev. 11

# Allianz Global Risks US Insurance Company

## FORMS AND ENDORSEMENT LIST

**NAMED INSURED:**   Fortune Beach LLC
**POLICY NUMBER:**   ATO 3005784
**EFFECTIVE DATE:**   3/21/2005

The following policy forms and endorsements have been attached to and made a part of the policy at inception.

| FORM NAME | FORM NUMBER | EDITION DATE |
|---|---|---|
| Contractors Installation / Builders Risk Form | AGRT-CM M3005784 | 03/2005 |
| Delayed Opening Coverage Form - Delayed Start-Up Expenses Insurance Extension | AGRT-CM 4006 (11-03) | 11/2003 |
| Fungi Exclusion Endorsement | AGRT-CM 5001 (11-03) | 11/2003 |
| Certified Act of Terrorism Endorsement | AGRT-CM 5T09 (06-04) | 06/2004 |
| Non-Certified Act of Terrorism Sublimit Endorsement | AGRT-CM 5T22 (11-03) | 11/2003 |
| TRIA General Change Endorsement | AGR-IL M001 (11-03) | 11/2003 |
| Conditional Limitation of Coverage For Terrorism - Sublimit on Annual Aggregate Basis Endorsement (Relating to Disposition of Federal Terrorism Risk Insurance Act of 2002) | AGRT-CM 5T35 (12-04) | 12/2004 |
| Combined Single Limit Endorsement | AGR-IL M001 (11-03) | 11/2003 |

AGR-DS 1002 (11-03)

**Allianz** ⑪
Global Risks

**Policy Number:**  ATO 3005784

**Effective Date:**  March 21, 2005

## CONTRACTORS INSTALLATION/BUILDERS RISK FORM

### SCHEDULE

**1A.**  **NAMED INSURED:**  Fortune Beach LLC

**1B.**  **ADDITIONAL INSURED(S):**  None

"Insured" hereafter shall include both the Named Insured and Additional Insured(s), if any.

**1C.**  **LOSS PAYEE(S):**  None

**2.**  **INSURED PROJECT:**

    A.   (i)   Project Name:   None

         (ii)   Description of Project:   Construction of a 52 story fire resistive high rise condominium building

         (iii)   Project Number:   None

    B.   Location of the Insured Project:   17001 Collins Avenue
                                       Sunny Isles, FL  33160

    C.   Total Project Value (estimated):   $115,000,000.

**3.**  **PERIOD OF INSURANCE:**

    A.   Effective Date:   ~~March 21, 2005~~  3/31/05

    B.   Expiration Date:   ~~June 1, 2007~~  5/31/07

**4.**  **LIMIT OF LIABILITY:**

The Company shall not be liable for more than $10,000,000 -per Occurrence except as sublimited below:

    A.   With respect to Debris Removal————— $  2,000,000.   per Occurrence

    B.   With respect to Insured Property
        while in the course of transit————— $  1,000,000.   per Occurrence

AGRT-CM M3005784

**Allianz (Ⅲ)**
Global Risks

SCHEDULE (Continued)

C.  With respect to Insured Property
    while stored off-site——————————— $ 1,000,000.     per Occurrence

D.  With respect to loss or damage directly
    or indirectly caused by, resulting from,
    contributed to, or aggravated by Land Movement ——— $ 10,000,000.     per Occurrence

E.  With respect to loss or damage directly
    or indirectly caused by, resulting from,
    contributed to, or aggravated by Water Damage ——— $ 10,000,000.     per Occurrence    *(second layer*
                                                                                              *has other*
                                                                                              *10,000,000)*

F.  With respect to Named Storms——————————— $10,000,000.     per Occurrence

G.  With respect to Interior Water Damage——————— $ 1,000,000.     per Occurrence

H.  With respect to Expediting Expenses——————— $ 250,000.     per Occurrence

I.  With respect to Ordinance and Law——————— $ 5,000,000.     per Occurrence

J.  With respect to Extension of Debris Removal ——— $ 100,000.     per Occurrence

These sublimits do not increase the Limit of Liability.

Any loss hereunder shall not reduce the Limit of Liability or sublimits of this Policy, except for those perils
to which an aggregate Limit of Liability or sublimits, if any, applies.

5.   **TERRITORIAL LIMITS:**

The Territorial Limits referred to in the Insuring Agreement are within the Continental United States.

6.   **DEDUCTIBLES:**

Each loss shall be adjusted separately and from the amount of each adjusted loss the amount as stated
below shall be deducted:

A.  For Land Movement ——————————— $ 100,000.     per Occurrence

B.  For Water Damage——————————— $ 250,000.     per Occurrence

C.  For Named Storms——————————— 5% of the Total Project Value at risk at the
                                          time of the loss subject to a minimum
                                          deductible of $250,000. per Occurrence

It is understood that the Named Storms deductible shall apply to all loss or damage that are Named Storm
related, and shall include loss or damage caused by windstorm, hurricane, hail, tornado, Water Damage,
wave wash, wind driven rain, sewer backup and mudslide.

AGRT-CM M3005784                                                    Page 2 of 14

**Allianz (Ⅱ)**
Global Risks

SCHEDULE (Continued)

# 100,000 see
endorsement

D.   For windstorm——————————— $   ~~250,000.~~   per Occurrence

C.   For all other perils——————————— $   25,000.   per Occurrence

In the event that more than one Deductible amount applies per Occurrence, then only the largest applicable Deductible amount shall be applied.

7.    **RATE/PREMIUM:**

The deposit premium is $494,200. plus $4. Florida Surcharge (Total of $494,204).

The final earned premium shall be computed at a term rate of $0.4297 per $100 of the final Total Project Value, as determined upon completion of the Insured Project, subject to a minimum premium of $494,200. There shall not be any return of premium in the event the final Total Project Value falls below the estimated Total Project Value stated in Item 2.C. of the Schedule or if the Insured Project is completed prior to the Expiration Date as stated in Item 3.B. of the Schedule.

**AGRT-CM M3005784**

**Allianz ⑪**
Global Risks

## CONDITIONS

8.    **INSURING AGREEMENT:**

This Policy, subject to the Limit of Liability and the terms, conditions, and limitations contained herein or endorsed hereon, insures against all risks of direct physical loss of or direct physical damage to Insured Property during the Period of Insurance while such Insured Property is at the construction site, stored off-site, or in the course of transit within the Territorial Limits specified in the Schedule.

Provided always that this insurance shall cease to attach as from the time the Insured Property is taken over or taken into use by the purchaser, tenant, or owner, or the Expiration Date stated in Item 3.B. of the Schedule, whichever is the earlier.

9.    **DEFINITIONS:**

A.    "Company"

The Company as referred to in this Policy shall mean Allianz Global Risks US Insurance Company.

B.    "Policy"

The Policy shall mean all parts of this document which include, but are not limited to, Declarations, Schedule, Conditions, and Endorsements.

C.    "Total Project Value"

The Total Project Value shall mean the sum of the replacement cost of all Insured Property. Replacement cost of Insured Property shall include, but not be limited to, cost of labor, materials, equipment, machinery, supplies, overhead and construction management fees, and the replacement cost of owner supplied materials, equipment, machinery, and supplies.

D.    "Insured Property"

Except as limited below, Insured Property shall mean all materials, equipment, machinery, and supplies owned by the Insured or for which the Insured shall be liable or shall have assumed liability, to be used in or incidental to the fabrication, erection, or construction of the Insured Project, provided the value of the Insured Property has been included in the estimated Total Project Value shown in the Schedule.

Insured Property shall not include:

(i)    contractors' plant and equipment, machinery, tools, or property of similar nature not destined to become a permanent part of the Insured Project but this exclusion shall not apply to formwork, fences, shoring, falsework and temporary buildings as long as the value of these items are included in the estimated Total Project Value as stated in Item 2.C. of the Schedule;

(ii)    automobiles or other vehicles, watercraft, or aircraft;

(iii)    accounts, bills, currency, deeds, securities, plans, blueprints, specifications, books, records, manuscripts, other similar papers, or data processing media;

**Allianz (Ⅲ)**
Global Risks

### CONDITIONS (Continued)

(iv)    trees, grass, shrubbery, plants, or water;

(v)    land, but this exclusion shall not apply to excavation and grading as long as the value of the excavation and grading is included in the estimated Total Project Value as stated in Item 2.C. of the Schedule;

(vi)    owner supplied material, equipment, machinery, and supplies unless the value of such material, equipment, machinery, and supplies is included in the estimated Total Project Value as stated in Item 2.C. of the Schedule;

(vii)    existing buildings or structures or any other existing property;

(viii)    transmission and/or distribution lines;

(ix)    property located in a flood zone "V" or any subzone thereof.

E.    "Occurrence"

Occurrence shall mean any one loss, disaster, or casualty, or series of losses, disasters, or casualties arising out of one event. With respect to the perils of Water Damage, Land Movement, windstorm, or riots, one event shall be construed to be all losses arising during a continuous period of seventy-two (72) hours.

The Insured may choose the time from which any such seventy-two (72) hour period shall be deemed to have commenced, provided it shall not be earlier than the time of the first loss sustained by the Insured during the Occurrence.

F.    "Named Storms"

(i)    Named Storms shall mean a storm or weather condition that:

(a)    has sustained wind speeds of at least 39 miles per hour; and

(b)    has been declared by the U.S. National Weather Service to be a hurricane, typhoon, tropical storm or cyclone.

(ii)    Such storm or weather condition shall be considered to be a Named Windstorm:

(a)    during the period of time that conditions 1. and 2. above are met; and

(b)    during the 72 hours immediately preceding the time when conditions (i) (a) and (i) (b) above are first met; and

(c)    during the 72 hours immediately following the time when such storm or weather condition has been downgraded, meaning that the storm or weather condition no longer has sustained wind speeds of at least 39 miles per hour and the storm or weather condition is no longer considered by the U.S. National Weather Service to be a hurricane, typhoon, tropical storm or cyclone".

AGRT-CM M3005784



**CONDITIONS (Continued)**

G.    "Water Damage"

Water Damage shall mean all water damage, including but not limited to, flood, inundation, waves, tidal water, or rainfall and/or resultant runoff; all whether wind driven or not.

H.    "Interior Water Damage"

Interior Water Damage shall mean loss or damage to Insured Property caused by, arising out of, contributed to, or resulting from Water Damage, all whether wind driven or not, entering the interior of any building or structure undergoing construction or renovation unless the exterior of such building or structure, including but not limited to the roof and outside walls, is complete, and then only if said exterior of the building first sustains physical damage by a covered loss through which the water enters.

However, Interior Water Damage shall not mean Water Damage caused by or resulting from water leaking from pipes or automatic sprinkler systems.

I.    "Land Movement"

Land Movement shall mean all land movement, including but not limited to, earthquake, volcanic eruption, tsunami, subsidence, landslide, mudflow, or rockfall.

J.    "Contaminants and/or Pollutants"

Contaminants and/or Pollutants shall mean any material which after its release or discharge can cause or threaten damage to human health and/or human welfare, or causes or threatens damage, deterioration, loss of value, marketability and/or loss of use to Insured Property; including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and/or Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

10.   **EXCLUSIONS:**

This Policy does not insure:

A.    Loss or damage caused by, or resulting from, wear and tear, moth, vermin, termites or other insects, inherent vice, latent defect, gradual deterioration, wet or dry rot and rust, corrosion, erosion or normal settling, shrinkage, and/or expansion of buildings and/or foundations.

B.    Loss or damage caused by, resulting from, contributed to or made worse by actual, alleged, or threatened release, discharge, escape or dispersal of Contaminants and/or Pollutants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any damage insured by this Policy.

Nevertheless, if a fire arises directly or indirectly from Contaminants and/or Pollutants, any loss or damage insured under this Policy arising directly from that fire shall, subject to the Limit of Liability and the terms, conditions, and limitations of this Policy, be covered.

The Insured shall give notice to the Company of intent to make a claim no later than twelve (12) months after the date the original physical loss or physical damage occurred.



**Allianz** ⑪
Global Risks

Exclusions (cont.)

**CONDITIONS (Continued)**

C.    Any loss of use or occupancy or consequential loss of any nature howsoever caused.

D.    Liquidated damages and/or penalties for delay or detention in connection with guarantees of performance or efficiency.

E.    Loss or damage caused by or resulting from infidelity or dishonesty on the part of the Insured and/or any employee of the Insured; inventory shortage or unexplained disappearance.

F.    Loss or damage caused by or resulting from frost, falling of ice, or freezing, unless resulting directly from damage caused by fire, lightning, explosion, windstorm, riot, riot attending a strike, civil commotion, aircraft, vehicles, or smoke.

G.    Loss or damage caused by or resulting from the enforcement of any ordinance or law, or any order of governmental or municipal authority; by suspension, lapse, termination and/or cancellation of any license, lease, or permit, or any injunction or process of any court, unless otherwise endorsed hereon.

H.    Loss or damage to Insured Property while aboard any aircraft or watercraft.

I.    The cost of making good faulty or defective workmanship, material, construction, designs, plans and/or specifications unless direct physical loss or direct physical damage not otherwise excluded under this Policy ensues and then this Policy will cover such ensuing loss or damage only.

J.    Loss, damage, or expense directly or indirectly caused by, resulting from, or aggravated by:

    (i)    hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

        (a)    by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval, or air forces; or

        (b)    by military, naval, or air forces; or

        (c)    by an agent of any such government, power, authority, or forces.

    (ii)    any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

    (iii)    insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence, seizure, or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband, illegal transportation, or trade;

K.    Loss by nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all terms, conditions, and limitations of this Policy, direct physical loss or direct physical damage by fire resulting from nuclear reaction, nuclear radiation, or radioactive contamination is insured against by this Policy.



**Allianz**
Global Risks

CONDITIONS (Continued)

11.   **LIMITATIONS OF COVERAGE:**

Notwithstanding anything contained herein to the contrary, this Policy shall not apply to:

A.   Loss or damage covered under any guarantee or warranty, expressed or implied, by any manufacturer or supplier whether or not such manufacturer or supplier is an Insured under this Policy.

B.   Any consulting engineer, architect, or designer, or any person employed by them or any others for whose acts they are legally liable, for loss or damage arising out of the performance of their respective professional activities, whether or not named as an Insured under this Policy.

12.   **TITLES OF PARAGRAPHS:**

The titles of various paragraphs and clauses of this Policy, and of Endorsements and supplemental contracts, if any, now or hereafter attached to this Policy, are inserted solely for convenience or reference and shall not be deemed in any way to limit or affect provisions to which they relate.

13.   **BAILEE CLAUSE:**

This insurance shall not inure directly or indirectly to the benefit of any carrier or other bailee.

14.   **INSUREDS' REPRESENTATIVE:**

The first Named Insured as shown in Item 1A. of the Schedule shall be the sole and irrevocable agent of each and every Insured for the purpose of:

A.   Payment of premium;

B.   Giving or receiving notice of cancellation;

C.   Requesting amendments to this Policy and accepting amendments to this Policy made by the Company.

15.   **OTHER INSURANCE:**

This Policy shall not provide coverage to the extent of any other insurance, whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property against the same peril; and the Company shall be liable for direct physical loss or direct physical damage only for the excess value beyond the amount due from such other insurance, subject to the applicable Deductible.

16.   **ASSIGNMENT:**

No assignment of interest under this Policy shall bind the Company until its consent is endorsed hereon. However, should any Insured die or be adjudged incompetent, bankrupt, or insolvent, the Company shall consent to the assignment of this Policy to the Insured's legal representative provided that written notice is given to the Company within thirty (30) days after the date of such death or adjudication of incompetency, bankruptcy, or insolvency.


**Allianz**
Global Risks

CONDITIONS (Continued)

17.  **ABANDONMENT:**

There can be no abandonment to the Company of the Insured Property.

18.  **SUBCONTRACTORS:**

In respect of operations performed by subcontractors of any tier for the Insured, such subcontractors may be included as an Additional Insured, but only as regards work performed by these subcontractors, the value of which shall have been included in the estimated Total Project Value shown in Item 2.C. of the Schedule.

19.  **RECORDS:**

Books and records shall be kept by the Insured in such manner that the Total Project Value of the Insured Project and the exact amount of any loss or damage can be accurately determined.

The Insured shall allow any person designated by the Company to inspect and audit the Insured's records at any reasonable time and place and permit extracts and copies thereof to be made.

20.  **REQUIREMENTS IN CASE OF LOSS:**

In the event of loss or damage to Insured Property the Insured shall:

A.  Give immediate notice thereof to the Company;

B.  Protect the Insured Property from further loss or damage;

C.  Within ninety (90) days from the date of discovery of the loss or damage, render a statement to the Company signed and sworn to by the Insured stating the knowledge and belief of the Insured as to the time and cause of the loss or damage and the interest of the Insured and all others in the Insured Property;

D.  Exhibit to any person designated by the Company all that remains of the Insured Property;

E.  As often as may be reasonably required, submit, and in so far as is within the Insured's power, cause the Insured's employees, members of the household, and others to submit to examinations under oath by any person named by the Company and subscribe the same; and, as often as may be reasonably required, produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative, and permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Company, or any of its employees or representatives, in connection with the investigation of any loss or claim hereunder, shall be deemed to be a waiver of any defense which the Company might otherwise have with respect to any loss or claim; but all such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability.

21.  **SETTLEMENT OF LOSS:**

Subject to the Limit of Liability and the terms, conditions, and limitations of this Policy, all adjusted losses shall be paid or made good within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss to the Company. No amount shall be paid on an adjusted loss or made good if the Insured has collected the same from others.

**Allianz ⑪**
Global Risks

**CONDITIONS (Continued)**

22. **ACTION AGAINST COMPANY:**

No suit, action, or proceeding against the Company for the recovery of any claim under this Policy shall be sustainable in any court of law or equity, unless the same be commenced within twelve (12) months of the discovery by the Insured of the loss or damage which gives rise to the claim, provided however, that if by the laws of the state within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit, or proceeding be commenced within the shortest period of time permitted by the laws of such state.

23. **PROTECTION OF PROPERTY:**

In case of loss or damage, it shall be lawful and necessary for the Insured, his or their factors, servants, or assigns, to sue, labor, and travel for in and about the defense, safeguard, and recovery of the Insured Property, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or the Company, in recovering, saving, and preserving the Insured Property in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interests.

24. **INSPECTION:**

The Company shall be permitted, but not obligated, to inspect the Insured Property and operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property or operations are safe, healthful, or are in compliance with any law, rule, or regulation.

25. **VALUATION:**

Subject to the Limit of Liability and the terms, conditions, and limitations of this Policy, the Company shall not be liable beyond the cost of repairing, replacing, or re-erecting the Insured Property at the time any one loss or damage occurs with materials of like kind and quality, less the cost of betterment, salvage, or other recovery.

26. **EXPEDITING EXPENSE:**

In the event of direct physical loss or direct physical damage to Insured Property by perils insured under this Policy, this insurance shall also pay, subject to the terms, conditions and limitations of this Policy, additional wages for overtime, nightwork, work on public holidays and the extra cost of express freight and airfreight incurred to return the Insured Project to the schedule which existed prior to the loss or damage. This clause is subject to a sublimit as stated in Item 4.H. of the Schedule.

**Allianz ⑪**
Global Risks

## CONDITIONS (Continued)

27. **DEBRIS REMOVAL:**

In the event of direct physical loss or direct physical damage to Insured Property by perils insured under this Insurance, this Insurance shall also pay, subject to the Limit of Liability and the terms, conditions, and limitations of this Policy, the cost of removal of material and debris being a part of the Insured Property located at the construction site and the cost to demolish and clear the construction site of undamaged parts caused by the enforcement of any building, zoning or land use law in force at the time of the loss. This clause is subject to a sublimit as stated in Item 4.A. of the Schedule.

This Policy does not cover any cost or expense to:

A.    Extract Contaminants and/or Pollutants from the debris; or

B.    Extract Contaminants and/or Pollutants from land and/or water; or

C.    Remove, restore, or replace land and/or water made necessary due to the presence of Contaminants and/or Pollutants; or

D.    Remove or transport any property, material, or debris to a site for storage or decontamination required because the property, material, or debris is affected by Contaminants and/or Pollutants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this Clause, that the Company shall have paid, or agreed to pay for direct physical loss or direct physical damage to the Insured Property and that the Insured shall give written notice to the Company of intent to claim for the cost of removal of debris or the cost of clean up, no later than twelve (12) months after the date the original physical loss or physical damage occurred.

28. **ORDINANCE AND LAW:**

1.    In the event of direct physical loss and/or direct physical damage which exceeds 25% of the Total Project Value to Insured Property by perils insured under this Policy, the Company shall also pay:

    A.    The increased cost to repair, replace or re-erect the Insured Property caused by the enforcement of any building, zoning or land use ordinance or law in force at the time of loss. If the Insured Property is replaced, it must be intended for similar occupancy of the current Insured Property, unless otherwise required by zoning or land use ordinance or law.

    B.    The cost to demolish and clear the Location of the Project Site of undamaged parts of the Insured Property caused by the enforcement of any building, zoning or land use law in force at the time of the loss.

2.    In no event, however, shall the Company be liable for costs associated with the enforcement of any ordinance or law which requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkali, toxic chemicals, liquids or gasses, waste materials or other irritants, any Contaminants and/or Pollutants.

3.    The Company shall not pay for the increased cost of construction until the Insured Property is actually repaired, replaced, or re-erected at the same Project Site or elsewhere and as soon as reasonably possible after the loss or damage, not to exceed thirty (30) months.

AGRT-CM M3005784



**CONDITIONS (Continued)**

4.　In no event, however, shall the Company pay more:

A.　If the Insured Property is repaired, replaced or re-erected at the same Project Site than the amount the Insured actually spends to:

　i.　Demolish and clear the Project Site; and

　ii.　Repair, replace or re-erect the Insured Property but not for more than property of like height, floor area and style at the same Project Site.

B.　If the Insured Property is not repaired, replaced, or re-erected at the same Project Site than:

　i.　The amount the Insured actually spends to demolish and clear the Project Site; and

　ii.　The cost to replace, at the same Project Site, the damaged or destroyed Insured Property with other property;

　　(1)　of like kind and quality;

　　(2)　of like height, floor area and style; and

　　(3)　used for the same purpose.

C.　Than the sublimit of liability for ordinance or law coverage, stated in Clause 4I. of the schedule.

29.　**SUBROGATION:**

A.　In the event of any payment made hereunder, the Company shall be subrogated to the extent of such payment to all Insureds' rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after a loss to prejudice such rights.

B.　The Company hereby waives all rights it may have acquired by payment of a loss under this Policy to recover the amount so paid from any person and/or organization with whom the Insured, prior to the occurrence of the loss or damage, shall have agreed in writing to waive their rights of recovery in respect of any loss or damage which may be caused by such person and/or organization to the Insured Property. However, the Company shall be subrogated, to the extent of any payment, to all Insureds' rights of recovery against any manufacturer and/or supplier of machinery, equipment, or other property for the cost of making good any loss or damage which such party has agreed to make good under a guarantee or warranty, whether expressed or implied, or any consulting engineer and/or architect and/or designer for loss or damage which arises out of the performance of their respective professional activities, whether an Insured or not.

**Allianz ⑪**
Global Risks

CONDITIONS (Continued)

30. **APPRAISAL:**

In the event the Insured and the Company are unable to agree as to the amount of the loss or damage to the Insured Property, each shall, on the written demand of the other, select a competent and disinterested appraiser. The appraisers shall select a competent and disinterested umpire. If failing for fifteen (15) days to agree upon such umpire, then upon request of the Insured or the Company, such umpire shall be selected by a judge or a court of record in the state in which the Insured Property is located. Each appraiser shall then appraise the loss and damage stating separately the amount of loss. If failing to agree the appraisers shall submit their differences to the umpire. An agreement of the amount of loss in writing of any two shall determine the amount of loss. Each appraiser shall be paid by the parties selecting him and the expense of appraisal and the umpire shall be paid by the parties equally. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

31. **CANCELLATION:**

This Policy may be cancelled by the first Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the first Named Insured at the address shown in this Policy or the last known address, written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective, except in the event of nonpayment of premium, the advance written notice of cancellation shall be reduced to a period of when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the Period of Insurance. Delivery of such written notice either by the first Named Insured or by the Company shall be equivalent to mailing.

If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the Insured.

32. **EFFECTIVE TIME:**

The time of inception and the time of expiration of this Policy and of any Endorsement attached hereto shall be 12:01 A.M. Standard Time at the Location of the Insured Project. To the extent that coverage in this Policy replaces coverage in other policies terminating noon standard time on the inception date of this Policy, coverage under this Policy shall not become effective until such other coverage has terminated.

33. **LOSS PAYABLE:**

Loss, if any, shall be payable to the first Named Insured and/or its assigned designee and to the Loss Payee named in the Schedule, if any, as their interests may appear. ·

34. **MISREPRESENTATION AND FRAUD:**

This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

AGRT-CM M3005784



**Allianz**
**Global Risks**

CONDITIONS (Continued)

35.    **EXTENSION OF DEBRIS REMOVAL:**

This Policy also covers the cost of cost of removal of material and debris that are not a part of the Insured Property located at the construction site when such material or debris is deposited at the construction site by a Named Storm.  This clause is subject to a sublimit as stated in Item 4.J. of the Schedule.

36.    **CONFORMITY OF STATUTE:**

Terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.



**Allianz**
Global Risks

**Policy Number:** ATO 3005784

**Effective Date:** March 21, 2005

### DELAYED OPENING COVERAGE FORM
### DELAYED START-UP EXPENSES INSURANCE EXTENSION

#### SCHEDULE

**1A.**  **NAMED INSURED:**                    Fortune Beach LLC.

**1B.**  **ADDITIONAL INSURED(S):**            None

"Insured" hereafter shall include both the Named Insured and Additional Insured(s), if any.

**2.**  **INSURED PROJECT:**

    **A.**  (i)    Project Name:          None

        (ii)   Description of Project:  Construction of two fire resistive mixed use condominium buildings.

        (iii)  Project Number:        None

    **B.**  Location of the Insured Project:  17001 Collins Avenue
Sunny Isles, FL  33160

**3.**  **PERIOD OF INSURANCE:**

    **A.**  Effective Date:        ~~March 21, 2005~~   3|31|05

    **B.**  Expiration Date:       ~~June 1, 2007~~   5|31|07

**4.**  **PERIOD OF INDEMNITY:**          12 Months

**5.**  **SCHEDULED DATE OF COMPLETION:**   ~~June 1, 2007~~   5|31|07

**6.**  **DEDUCTIBLE:**                   30 day waiting period



**Allianz** Global Risks

## CONDITIONS (Continued)

**35.    EXTENSION OF DEBRIS REMOVAL:**

This Policy also covers the cost of cost of removal of material and debris that are not a part of the Insured Property located at the construction site when such material or debris is deposited at the construction site by a Named Storm. This clause is subject to a sublimit as stated in Item 4.J. of the Schedule.

**36.    CONFORMITY OF STATUTE:**

Terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.



**SCHEDULE (continued)**

7. **LIMIT OF LIABILITY:**

The Company shall not be liable for more than following items per Occurrence in the aggregate as listed below or $10,000,000 per Occurrence in the aggregate, whichever is the lesser:

| | | |
|---|---|---|
| A. Architectural and Engineering Fees | $ | 50,000. |
| B. Legal and Accounting Fees | $ | 200,000. |
| C. Additional Construction Financing Interest | $ | 6,000,000. |
| D. Administrative Overhead | $ | 3,829,500. |
| E. Real Estate, Property Taxes and Insurance | $ | 3,050,000. |
| F. Sales and Marketing | $ | 580,000. |
| G. Real Estate Commissions | $ | 650,000. |

14,359,500 T

8. **MINIMUM EARNED PREMIUM:**    $    163,952.


Allianz
Global Risks

## CONDITIONS

9.  **INSURING AGREEMENT:**

In consideration of the additional premium charged, and subject to the terms, conditions, and limitations of the Policy to which this extension is attached and to the Limit of Liability, terms, conditions, and limitations of this extension, this Policy is extended to indemnify the Insured, specified in the Delayed Start-Up Insurance Extension Schedule, for Delayed Start-Up Expenses, as defined in this extension, incurred during the Period of Delay, when such delay is caused by direct physical loss or direct physical damage to Insured Property during the Period of Insurance, provided such loss or damage is indemnifiable under the Policy to which this extension is attached or would have been indemnifiable except for the application of the Deductible.

10. **BASIS OF INDEMNITY:**

Subject to the Limit of Liability specified in the Schedule, the Insured will be indemnified for Delayed Start-Up Expenses to the extent that such expenses are actually and necessarily incurred to enable the Insured to commence commercial operations in the manner originally planned.

The Delayed Start-Up Expenses indemnifiable under this extension shall be reduced by the following:

A.  Any income realized from commercial operations at the Location of the Insured Project during the Period of Delay, or any increase in the Insured's income from any other property due to the delay;

B.  Any amount saved in respect of labor costs, charges and expenses payable out of the anticipated revenue that do not arise or are reduced during the Period of Delay;

C.  Any liquidated damages and/or penalties the Insured is entitled to receive.

11. **ADDITIONAL EXTRA EXPENSE:**

The Company shall also pay for expenses that are necessarily incurred by the Insured for the purposes of reducing the amount of loss for which the Company is liable but in no event shall the aggregate of the expenses payable under this clause exceed the amount by which the loss otherwise payable under this extension is thereby reduced. Such expenses shall not be subject to the application of the coinsurance clause.

12. **COINSURANCE CLAUSE:**

If the Limit of Liability for the Delayed Start-Up Expenses, as stated in Item 7. of the Schedule, is less than the actual Delayed Start-Up Expenses for an equivalent period of time immediately following the actual date of completion of the Insured Project, then the Company shall not be liable for the payment of a greater proportion of the amount of Delayed Start-Up Expenses sustained than the Limit of Liability for Delayed Start-Up Expenses bears to the actual Delayed Start-Up Expenses and such reduced amount shall be determined prior to the application of the Deductible.

**Allianz ⓜ**
Global Risks

**CONDITIONS (Continued)**

13.  **DEFINITIONS:**

A.  "Scheduled Date of Completion"

Scheduled Date of Completion shall mean the later of the following:

(i)  The date stated in the Schedule; or

(ii)  The date on which, but for the insured loss or damage, commercial operations would have commenced.

B.  "Period of Delay"

Period of Delay shall mean the period of time between the Scheduled Date of Completion, as stated in the Schedule, and the actual date on which commercial operations commenced or could have commenced; however, not exceeding such delay as would result if the loss or damage were repaired or replaced with the exercise of due diligence and dispatch, but in no event exceeding the Period of Indemnity stated in the Schedule for all Indemnifiable Occurrences combined. The Period of Delay shall not be terminated by the expiration or cancellation of the Policy with respect to indemnity payable hereunder in direct consequence of insured loss or damage occurring prior to such expiration or cancellation.

C.  "Delayed Start-Up Expenses"

(i)  "Architectural and Engineering Fees"

Architectural and Engineering Fees shall mean additional architectural and engineering expenses incurred, excluding always any costs for redesign or betterment, incurred during the Period of Delay beyond the Scheduled Date of Completion, for the purpose of expediting the repair of insured Property in the event of direct physical loss or direct physical damage covered under this Policy.

(ii)  "Legal and Accounting Fees"

Legal and Accounting Fees  shall mean the owner's additional legal and accounting expenses, incurred as a result the delay in completion incurred during the Period of Delay after the Scheduled Date of Completion.

(iii)  "Additional Construction Financing Interest"

Additional Construction Financing Interest shall mean additional interest that may be charged by lenders for the extension or renewal of interim financing necessary for the completion of the insured Project incurred during the Period of Delay after the Scheduled Date of Completion.

(iv)  "Administrative Overhead"

Administrative Overhead shall meant the owner's additional unallocated administrative overhead expenses incurred as a result the delay in completion incurred during the Period of Delay after the Scheduled Date of Completion.

AGRT CM 4006   (11-03)                                                                 Page 4 of 6

**Allianz 🏠**
Global Risks

CONDITIONS (Continued)

(v)    "Real Estate, Property Taxes and Insurance"

Real Estate, Property Taxes and Insurance shall real estate or property taxes and similar assessments which become due and payable during the Period of Delay after the Scheduled Date of Completion and the premiums for additional Insurance that must be purchased due to a delay in the project which are incurred during the Period of Delay after the Scheduled Date of Completion.

(vi)    "Sales and Marketing"

Sales and Marketing shall mean additional sales, marketing, advertising and promotional costs which are incurred during the Period of Delay after the Scheduled Date of Completion.

(vii)    "Real Estate Commissions"

Real Estate Commissions shall mean the additional commissions payable to leasing or real estate agents resulting from the remarketing caused by loss of sales or leasing as a result of the delay in completion.

14.    **DEDUCTIBLE CLAUSE:**

It is agreed that the amount designated in the Schedule as the Deductible is a waiting period. The number of days in the waiting period stated in the Schedule shall be deducted from the Period of Delay for each and every Occurrence giving rise to a claim under this extension.

15.    **EXCLUSIONS:**

Coverage afforded by this extension does not insure Delayed Start-Up Expenses resulting from a delay beyond the Scheduled Date of Completion of the Insured Project directly or indirectly due to:

A.    Enforcement of any ordinance, law, regulation, or ruling restricting or regulating the construction, repair, alteration, use, installation, operation, or demolition of buildings, structures, or parts of the Insured Project;

B.    Strikes, protests, lock-outs, labor disturbances, riots, civil commotions, or the acts of any persons taking part in any such occurrence or disorder;

C.    Suspension, lapse, or cancellation of a lease, license, contract, or order, or the failure of the Insured to obtain or extend any permit, lease, license, or other commitments;

D.    Alterations, additions, improvements, rectification of defects or faults, or elimination of any deficiencies carried out during the repair or replacement of lost or damaged Insured Property;

E.    Non-availability of funds for the repair or replacement of lost or damaged Insured Property.

16.    **NOTICE OF CHANGE IN PROGRESS SCHEDULE:**

The Insured shall immediately advise the Company of any change between the planned and the actual project progress schedule.

**AGRT CM 4006    (11-03)**                                              **Page 5 of 6**

**Allianz ⑪**
Global Risks

CONDITIONS (Continued)

17.    **REQUIREMENTS IN CASE OF LOSS:**

In the event of any incident or Occurrence which might give rise to a claim under this extension:

A.    The Insured shall immediately notify the Company and immediately submit to the Company any revisions to the original progress schedule where such revisions could delay the Scheduled Date of Completion.

B.    The Insured shall do and concur in doing and permit to be done all such things as may be reasonably practicable to minimize or establish the extent of any interference with the construction schedule as to avoid or diminish any delay resulting therefrom.

C.    The Company and every person authorized by the Company shall, without prejudice to any party insured by this Policy, have access to the construction site together with the rights of direct negotiation with the contractor(s), manufacturer(s), supplier(s) and/or other(s) involved party(ies) in order to establish the possible cause and extent of the loss or damage, its effect on the Insured Property, to examine the possibilities for minimizing any delay to the Scheduled Date of Completion and, if necessary, to make recommendations for the avoidance or minimization of such delay.

D.    The Insured shall make available to the Company and every person authorized by the Company all records, contracts, bills, accounts, invoices, and similar documentation relevant to the Occurrence and the Delayed Start-Up Expenses.

18.    **AUDIT ADJUSTMENT OF LOSS:**

A.    In the event of a claim being made under this extension, twelve months after actual commencement of commercial operations, the Company shall be given the opportunity to conduct an audit of the Insured's records to determine the actual Delayed Start-Up Expenses incurred by the Insured.  This amount shall then be reduced in accordance with the Deductible stated in the Schedule in respect of each and every Occurrence.

B.    In the event the amount of actual Delayed Start-Up Expenses differs from the amount already paid by the Company this difference shall be paid by the Company or the Insured, as appropriate, to the other party.

AGRT CM 4006    (11-03)


Allianz ⑪
Global Risks

Policy Number:   ATO 3005784

Effective Date:   March 21, 2005

Endorsement Number

1

## FUNGI EXCLUSION ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This Endorsement contains words and phrases which have specific definitions for this Endorsement only. Please refer to item B. below for details of these definitions.

A.    **Exclusion**

Notwithstanding any terms or conditions, this Policy does not insure against:

1.    Any cost or expense incurred to clean up, remove or remediate any Fungi, or

2.    Any cost or expense incurred to test for, monitor, or assess the existence, concentration or effects of Fungi.

B.    **Definition**

1.    For the purpose of this Endorsement, Fungi shall mean any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of Fungi.

**Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.**

AGRT-CM 5001 (11-03)

Page 1 of 1



**Allianz**
Global Risks

Policy Number:  ATO 3005784

Effective Date:  March 21, 2005

Endorsement Number

2

## CERTIFIED ACT OF TERRORISM ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This Endorsement contains words or phrases that have specific Definitions. Refer to Items A. and B. for details of these definitions.

In consideration of the premium charged, and subject to the terms, exclusions, limits and conditions of the Policy to which this Endorsement is attached and to the provisions contained within this Endorsement, the following changes are made to this Policy:

**A.    Definitions**

The following definitions are added with respect to the provisions of this Endorsement to the Policy:

1.    The Act

The Act means the federal Terrorism Risk Insurance Act of 2002, effective November 26, 2002.

2.    Certified act of terrorism

Certified act of terrorism means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to The Act. The criteria contained in The Act for a Certified act of terrorism include the following:

a.    The act resulted in aggregate property and casualty insurance losses in excess of $5 million; and

b.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.    Amendment**

For purposes of this Endorsement only, the definition of Occurrence stated in the Policy to which this Endorsement is attached, is amended as follows:

Occurrence

The term Occurrence as applied to a Certified act of terrorism shall mean any one loss, disaster, or casualty, or series of losses, disasters or casualties attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses will be treated as one Occurrence. It shall be defined as the sum total of all losses arising out of or caused by a Certified act of terrorism during any period of 72 consecutive hours. When filing proof of loss, the Insured shall have the right to elect the moment at which the 72 hour period shall be deemed to have commenced provided always that no elected period of 72 hours shall commence earlier than when the first loss to the Insured Property or interests occurs. However, the Company shall not be liable hereunder for any loss or damage:

AGRT-CM 5T09 (06-04)                                                                      Page 1 of 2



**Allianz**
**Global Risks**

1. occurring before this Policy becomes effective; or

2. arising from an Occurrence which is in progress at the time this Policy becomes effective, even if such loss or damage occurs after this Policy becomes effective; or

3. occurring after the Expiration Date of this Policy, except loss or damage arising from an Occurrence in progress at the time this Policy expires.

**C.    Limitation**

The following limitation is added to the Policy:

Cap on Certified Terrorism Losses

With respect to any one or more Certified acts of terrorism under The Act, the Company will not pay any amounts for which it is not responsible under the terms of The Act.

**D.    Application of Other Exclusions**

All other limitations and exclusions as provided elsewhere in this Policy are in full force and effect.

**E.    Disclosure**

The following disclosure is added to the Policy:

"NOTICE: TERRORISM COVERAGE IN THIS ENDORSEMENT IS PARTIALLY REINSURED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES PAYS 90% OF COVERED TERRORISM LOSSES EXCEEDING A STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY INSURERS. ANY PREMIUM CHARGED FOR TERRORISM COVERAGE IS STATED HEREIN."

**F.    Premium**

The following is added to the COMMON POLICY DECLARATIONS of this Policy:

| Coverage | Premium |
|---|---|
| Certified Act of Terrorism Coverage | $6,848. |

**G.    Expiration of Coverage under The Act**

Coverage provided for Certified acts of terrorism under this Endorsement shall terminate at midnight on the earliest of December 31, 2005 or the Policy Expiration Date. If the U.S. Secretary of Treasury extends the federal program beyond December 31, 2005 and this Policy has not yet expired, an additional premium may be charged to continue such coverage under this Policy.

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the Policy to which this Endorsement is attached other than as above stated.**

_____

AUTHORIZED REPRESENTATIVE

**Allianz** ⑪
Global Risks

Policy Number:    ATO 3005784

Effective Date:    March 21, 2005

Endorsement Number

3

## NON-CERTIFIED ACT OF TERRORISM – SUBLIMIT ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium charged, and subject to the terms, exclusions, limits and conditions of the Policy to which this Endorsement is attached and to the provisions contained within this Endorsement, the following changes are made to this Policy:

A.    **Definitions**

The following definitions are added with respect to the provisions of this Endorsement to the Policy:

1.    The Act

The Act means the federal Terrorism Risk Insurance Act of 2002, effective November 26, 2002.

2.    Non-certified act of terrorism

Non-certified act of terrorism means:

a.    a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and

b.    an act which is not certified as a terrorist act pursuant to The Act; and

c.    where the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the insured damage exceeds $25,000,000, the Company will include: i) all insured damage to property of all persons and entities affected by the Non-certified act of terrorism; and ii) business interruption losses sustained by owners or occupants of property that suffers direct physical damage. For the purposes of this definition, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

AGRT-CM 5T22 (11-03)

Page 1 of 3

**Allianz ⓘ**
Global Risks

**B.**  **Amendment**

For the purposes of this Endorsement only, the definition of Occurrence stated in the Policy to which this Endorsement is attached, is amended as follows:

Occurrence

The term Occurrence as applied to a Non-certified act of terrorism shall mean any one loss, disaster, or casualty, or series of losses, disasters or casualties attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses will be treated as one Occurrence. It shall be defined as the sum total of all losses arising out of or caused by a Non-certified act of terrorism during any period of 72 consecutive hours. When filing proof of loss, the Insured shall have the right to elect the moment at which the 72 hour period shall be deemed to have commenced provided always that no elected period of 72 hours shall commence earlier than when the first loss to the Insured Property or interests occurs. However, the Company shall not be liable hereunder for any loss or damage:

1.　occurring before this Policy becomes effective; or

2.　arising from an Occurrence which is in progress at the time this Policy becomes effective, even if such loss or damage occurs after this Policy becomes effective; or

3.　occurring after the Expiration Date of this Policy, except loss or damage arising from an Occurrence in progress at the time this Policy expires.

**C.**  **Exclusion**

The following exclusion is added to the Policy:

Non-Certified Act of Terrorism Exclusion

This Policy does not insure against loss or damage caused directly or indirectly by a Non-certified act of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**D.**  **Additional Coverage – Non-Certified Act of Terrorism**

The following Additional Coverage is added to the Policy:

Non-Certified Act of Terrorism

This Policy is extended to insure against loss or damage to Insured Property at Location of the Insured Project resulting from a Non-certified act of terrorism.

The Company shall not be liable under this Policy for more than the following Sublimits for all loss or damage caused directly or indirectly by or resulting from a Non-certified act of terrorism, including any loss or damage covered by this Policy (by fire or otherwise) which ensues from a Non-certified act of terrorism:

Sublimits:　　$ 1,000,000　per Occurrence; subject to

　　　　　　　$ 1,000,000　annual aggregate

AGRT-CM 5T22 (11-03)

Page 2 of 3



Allianz
Global Risks

Refer to Item 4 of the Schedule of this Policy for other provisions relating to the application of the above Sublimits, including the application of the annual aggregate.

E.    **Additional Exclusion**

The following additional exclusion is added to the Policy:

Exclusion of Acts of Biological or Chemical Terrorism

This Policy does not insure against loss or damage caused directly or indirectly by a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals where:

1.    that act appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and

2.    the act is not certified as a terrorist act pursuant to The Act; and

3.    when one or more of the following are attributable to such act:

a.    the terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

b.    pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

F.    **Limitation**

The following limitation is added to the Policy:

Non-Certified Act of Terrorism Outside of the USA

The Additional Coverage – Non-Certified Act of Terrorism shall not apply to a Non-certified act of terrorism that occurs outside of the fifty (50) states of the United States of America and District of Columbia.

G.    **Application of Other Exclusions**

All other limitations and exclusions as provided elsewhere in this Policy are in full force and effect.

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the Policy to which this Endorsement is attached other than as above stated.**

_____
AUTHORIZED REPRESENTATIVE

AGRT-CM 5T22 (11-03)

Page 3 of 3



**Policy Number:** ATO 3005784
**Effective Date:** March 21, 2005

Endorsement Number
4

### TRIA GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

CONTRACTORS INSTALLATION / BUILDERS RISK FORM

IT IS AGREED THAT PARAGRAPH G. OF ENDORSEMENT NO. 2, FORM AGRT-CM 5T09 (06-04) IS DELETED IN ITS ENTIRETY. FURTHER, THE ATTACHED ENDORSEMENT NO. 5, FORM AGRT-CM 5T35 (12-04) CONDITIONAL LIMITATION OF COVERAGE FOR TERRORISM IS HEREBY ADDED.

**Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.**

_____
AUTHORIZED REPRESENTATIVE

03/18/05-er

AGR IL M001 (11-03)

Page 1 of 1



**Policy Number:** ATO 3005784
**Effective Date:** March 21, 2005

**Endorsement Number**
**5**

## CONDITIONAL LIMITATION OF COVERAGE FOR TERRORISM
## – SUBLIMIT ON ANNUAL AGGREGATE BASIS ENDORSEMENT
### (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

CONTRACTORS INSTALLATION / BUILDERS RISK FORM

In consideration of the premium charged, and subject to the terms, exclusions, limits and conditions of the policy to which this endorsement is attached and to the provisions contained within this endorsement, the following changes are made to the policy:

A.  Applicability of the Provisions of This Endorsement

1.  The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a.  The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this policy; or

   b.  A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to the Insured and with revisions that:

   i.  Increase the Company's statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses the Company must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

   ii.  Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

   iii.  Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

   The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2.  If the provisions of this endorsement become applicable, such provisions:

   a.  Supersede any terrorism endorsement(s) already endorsed to the policy that addresses a certified act of terrorism and/or a non-certified act of terrorism, but only with respect to loss or damage from an "occurrence" of "terrorism" that occurs on or after the date when the provisions of this endorsement become applicable; and

   b.  Remain applicable unless the Company notifies the Insured of changes in these provisions, in response to federal law.

3.  If the provisions of this endorsement do NOT become applicable, any terrorism endorsement(s) already endorsed to the policy, that addresses a certified act of terrorism and/or a non-certified act of terrorism, will continue in effect unless the Company notifies the Insured of changes to that endorsement(s) in response to federal law.

AGRT-CM 5T35 (12-04)

Page 1 of 3


**Allianz**
**Global Risks**

B.  The following definitions are added and apply under this endorsement wherever the terms terrorism or occurrence are enclosed in quotation marks.

1.  "Terrorism" means activities against persons, organizations or property of any nature:

a.  that involve the following or preparation for the following:

i.  Use or threat of force or violence; or

ii.  Commission or threat of a dangerous act; or

iii.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b.  When one or both of the following applies:

i.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

ii.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2.  "Occurrence" as applied to "terrorism" means one loss, disaster, or casualty, or series of losses, disasters or casualties attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses will be treated as one "occurrence." It shall be defined as the sum total of all losses arising out of or caused by "terrorism" during any period of 72 consecutive hours. When filing proof of loss, the insured shall have the right to elect the moment at which the 72 hour period shall be deemed to have commenced provided always that no elected period of 72 hours shall commence earlier than when the first loss to the insured property or interests occurs. However, the Company shall not be liable hereunder for any loss or damage:

a.  Occurring before the policy becomes effective; or

b.  Arising from an "occurrence" which is in progress at the time the policy becomes effective, even if such loss or damage occurs after the policy becomes effective; or

c.  Occurring after the expiration date of the policy, except loss or damage arising from an "occurrence" in progress at the time the policy expires.

C.  The following exclusion is added to the policy:

EXCLUSION OF TERRORISM INCLUDING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM

The Company will not pay for loss or damage covered by this policy including its endorsements caused directly or indirectly by "terrorism", including action in hindering or defending against actual or expected "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following conditions are attributed to "terrorism":

1.  The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2.  Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3.  The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5.  The "terrorism" occurs outside of the fifty (50) states of the United States of America and the District of Columbia.

AGRT-CM 5T35 (12-04)                                                                 Page 2 of 3


**Allianz**
Global Risks

D.  Limitation of Amount of Coverage for "Terrorism"

When "terrorism" is not excluded by any of the conditions in Paragraphs C.1 through C.5 above, coverage for "terrorism" is subject to the following conditions, limitations, provisions, and exclusions:

1.  This provision is subject to a sublimit shown in Paragraph D.2 below. However, the sublimit in Paragraph D.2 below only applies to covered "terrorism" when the total amount of loss exceeds a U.S. $25,000,000 threshold in any one "occurrence".

    Coverage under this provision only applies to Insured Property at the location of an Insured Project provided that location is within one of the fifty (50) States of the United States or the District of Columbia.

    The calculation of the threshold is done by including the total of all insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada from "terrorism" in the same "occurrence". When that calculation results in a total amount greater than $25,000,000, then the sublimit will apply. In making this calculation, the Company will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property in that same "occurrence". For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions;

2.  Irrespective of the number of locations involved, the Company shall not be liable under this provision for more than the following sublimit for all loss or damage covered by this policy caused directly by or resulting from "terrorism" during any one "occurrence", including any loss or damage covered by this policy or its endorsements (by fire or otherwise) which ensues from "terrorism". This limitation applies even if another peril not otherwise excluded contributes concurrently or in any sequence to the loss or damage.

    Sublimit:    $ 1,000,000 per "occurrence"; subject to

                 $ 1,000,000 annual aggregate

    The sublimit is part of and not in addition to the policy limit. The sublimit does not increase the policy limit or any other sublimit.

    The "occurrence" sublimit for this endorsement is subject to an annual aggregate; such sublimit shall apply in the aggregate for all losses under this endorsement occurring during the policy period.

E.  Application of Other Exclusions

1.  When the EXCLUSION OF TERRORISM INCLUDING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM applies in accordance with the terms of Paragraphs C.1. or C.2., such exclusion applies without regard to any Nuclear Hazard Exclusion or Radioactive Contamination Exclusion in this policy including its endorsements.

2.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this policy including its endorsements, such as losses excluded by any Nuclear Hazard Exclusion or War Exclusion.

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.**

AGRT-CM 5T35 (12-04)

Page 3 of 3



**Allianz**
Global Risks

Policy Number:    ATO 3005784
Effective Date:    March 21, 2005

Endorsement Number
6

## COMBINED SINGLE LIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

CONTRACTORS INSTALLATION / BUILDERS RISK FORM

IT IS UNDERSTOOD AND AGREED THAT THE COMPANY SHALL NOT BE LIABLE FOR MORE THAN $10,000,000. IN ANY ONE OCCURRENCE FOR ALL COVERAGES PROVIDED UNDER THIS POLICY COMBINED, INCLUDING BUT NOT LIMITED TO PROPERTY DAMAGE AND DELAYED START-UP EXPENSES.

**Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.**

_____
AUTHORIZED REPRESENTATIVE

03/18/05-er

AGR IL M001 (11-03)

Page 1 of 1

**Allianz ⑪**

# Important Notice to Policyholders

To obtain information or make a complaint:

You may call Allianz Insurance Company's toll free telephone number for information or to make a complaint at

**1-800-421-0504**

You may also write to Allianz Insurance Company at:

P.O. Box 7780
Burbank, California  91510-7780

You may contact the Florida Department of Insurance to obtain information on companies, coverages, rights or complaints at

**904-922-3137**

You may write the Florida Department of Insurance

P.O. Box 5320
Tallahassee, Florida 32314-5320
FAX # (904) 922-3146

**PREMIUM OR CLAIM DISPUTES:**  Should you have a dispute concerning your premium or about a claim you should contact the company first.  If the dispute is not resolved, you may contact the Florida Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**  This notice is for information only and does not become a part of condition of the attach document.



**Allianz Global Risks US Insurance Company**
2350 Empire Avenue, Burbank, CA 91504

# COMMERCIAL LINES POLICY

**THIS POLICY CONSISTS OF:**
- **DECLARATIONS**
- **ONE OR MORE COVERAGE PARTS.**

**A COVERAGE PART CONSISTS OF:**
- **ONE OR MORE COVERAGE FORMS**
- **APPLICABLE FORMS AND ENDORSEMENTS**

AGR-DS 1000 (12-04)

**In Witness Whereof,** we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

AGR-DS 1000 (12-04)

Page 2 of 2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Absolute Pollution Exclusion

The following exclusion is added to the policy:

We will not pay for any loss, damage or expense, including defense costs and expenses, arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants." This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expense.

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms, conditions and exclusions remain unchanged.

**All Other Terms and Conditions Remain Unchanged.**

RHIC7027(12/05)          Includes Copyrighted Material of Insurance Services Office, Inc.          Page 1 of 1
                                                with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS MATERIAL ENDORSEMENT

This policy does not insure loss or expense resulting from:

1. Asbestos material removal unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems;

2. Demolition or increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulation asbestos material;

3. Any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

All other terms and conditions of the policy remain unchanged.

RHIC7005(12/05)    Includes Copyrighted Material of Insurance Services Office, Inc. with its permission    Page 1 of 1